UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL., CHELSEY SCHRAMM, M.S., PA-C, AND CHELSEY SCHRAMM, M.S., PA-C, INDIVIDUALLY, | ) ) ) ) ) | |
| PLAINTIFFS, | ) ) ) | No. 12 C 8262 |
| v. | ) ) ) | Judge Thomas M. Durkin |
| FOX VALLEY PHYSICAL SERVICES, S.C., AN ILLINOIS MEDICAL CORPORATION, ROBERT W. BOER, D.C., PA-C, INDIVIDUALLY MICHAEL DUNFORD, INDIVIDUALLY, PRIORITY HEALTH CHIROPRACTIC OF YORKVILLE, ILLINOIS, PAULA WEIHLER, D.C., INDIVIDUALLY, STUART WEIHLER, INDIVIDUALLY, DONALD BAIERLE, INDIVIDUALLY, HEALTHSHOURCE OF NAPERVILLE, AND MARK FRAHM, D.C., INDIVIDUALLY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chelsey Schramm, individually and on behalf of the United States of America, has sued three sets of defendants: (1) Fox Valley Physician Services, S.C. ("FVPS"), Robert W. Boer, and Michael Dunford (collectively, the "FVPS Defendants"); (2) Priority Health Chiropractic of Yorkville, Illinois ("Priority Health"), Paula Weihler, Stuart Weihler, and Donald Baierle (collectively, the "Priority Health Defendants"); and (3) Healthsource of Naperville ("HealthSource"), and Mark Frahm (the "HealthSource Defendants"), for alleged violations of the False Claims Act ("FCA"), for payment under a mistake of fact, and for unjust

enrichment. The defendants have moved to dismiss Schramm's amended complaint with prejudice, arguing that she has not alleged fraud with particularity, as is required under Rule 9(b). For the following reasons, the Court grants the defendants' motions in part, and denies them in part.

## BACKGROUND

FVPS is an Illinois medical corporation located in North Aurora, Illinois. R. 15 ¶¶ 7-8. Schramm was employed by FVPS as a licensed Physician Assistant from July 9, 2012, until her resignation effective October 9, 2012. *Id.* at ¶¶ 2, 8. She alleges that she provided medical services to patients at FVPS during her first week of employment. *Id.* at ¶ 8. Defendant Robert W. Boer is FVPS's owner and President, and also provides medical services on the company's behalf as a chiropractor and Physician Assistant. *Id.* at ¶ 11. Defendant Donald Baierle is the FVPS employee responsible for billing Medicare. *Id.* at ¶ 14. Schramm does not identify Defendant Michael Dunford's position or title, but the Court infers that he was employed by FVPS and/or defendant Priority Health, a medical service provider located in Yorkville, Illinois. *See id.* at ¶ 42. Although employed by FVPS, Schramm alleges that she was directed to provide medical services to patients of Priority Health. According to Schramm, FVPS and Priority Health operate as a "joint enterprise" for the purpose of obtaining Medicare proceeds. *Id.* at ¶¶ 9-10. Defendant Paula Weihler is a chiropractor and Priority Health's owner, *id.* at ¶ 12; defendant Stuart Weihler is Paula's husband and Priority Health's co-manager, *id.* at ¶ 13. Schramm alleges on information and belief that FVPS also has a "joint

enterprise" relationship with defendant HealthSource, a medical provider located in Naperville, Illinois. *Id.* at ¶ 15.

Schramm alleges that FVPS and Priority Health, and, upon information and belief, HealthSource, receive roughly eighty percent of their income from the United States Government through the Medicare program. *Id.* at ¶ 19. Medicare is a federally funded health insurance program that provides insurance coverage for people over the age of sixty-five and for people with disabilities. *Id.* at ¶ 21. It is administered by the Centers for Medicare and Medicaid Services ("CMS"). *Id.* at ¶ 5. CMS requires medical providers to: (1) meet all requirements in the Medicare Provider Manual; (2) comply with all contractual terms and policies outlined in federal and state rules; (3) order or prescribe only services that meet the accepted standards for medical necessity, appropriateness, and quality of health care; (4) promptly notify CMS of any payment received by the provider to which it is not entitled or which exceeds the amount to which it is properly entitled; and (5) certify that a claim for payment is true, accurate, prepared with the knowledge and consent of the provider, and does not contain untrue, misleading, or deceptive information or claims. *Id.* at ¶ 20. Providers such as FVPS, Priority Health, and HealthSource submit claims to the appropriate Medicare carrier by listing numerical codes corresponding to administered procedures and services. *Id.* at ¶¶ 33-34. Providers who submit health care claims to Medicare are required to certify that each claim is true, correct, and complete. *Id.* at ¶ 26.

Schramm contends that Boer, Dunford, and Baierle told her that she could immediately begin seeing and treating Medicare patients at FVPS and Priority Health because her application to be approved as a medical provider had been submitted to CMS. *Id.* at ¶ 42. As such, beginning on Schramm's first day of work on July 9, 2012, she was instructed to begin seeing patients. *Id.* at ¶ 43. On October 3, 2012, Baierle "formally advised" her that CMS had approved her application. *Id.* at ¶ 43. She resigned six days later. Schramm claims that Boer, Dunford, and Baierle also instructed her to use certain numerical codes for services that, under the applicable Medicare rules, require physician supervision by CMS. *Id.* at ¶¶ 45, 47. They directed her to electronically sign both her name and her supervising physician's name (Dr. Angelo Reyes) on Medicare patient records, even though Dr. Reyes never saw the patients or their files. *Id.* at ¶ 45. Schramm further alleges that Stuart Weihler, Priority Health's co-manager, improperly tampered with Medicare patient files by adding and/or changing numerical codes to falsely and unlawfully increase Medicare billings. *Id.* at ¶ 49.

Schramm also alleges upon information and belief that since September 2012, defendants HealthSource and Frahm (its owner) entered into an agreement with FVPS whereby FVPS agreed to employ Harmony Reese (a physician assistant) to treat Medicare patients under the supervision of Dr. Reyes at HealthSource's Naperville facility. *Id.* at ¶ 50. Schramm alleges on information and belief that Dr. Reyes did not actually supervise Reese. *Id.* at ¶¶ 50-51.

Schramm has filed a seven-count complaint against the defendants, asserting claims under the FCA for conspiracy (Count I); presentation of false claims (Count II); false statements (Count III); possession of the Government's money (Count IV); and concealing of an obligation (Count V). She has also asserted a claim to recover payments made pursuant to a mistake of fact (Count VI), and a claim for unjust enrichment (Count VII). The Priority Health, FVPS, and HealthSource Defendants have filed separate motions to dismiss, R. 32, 35, 55.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Schramm's fraud allegations are subject to Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *United States ex rel. Oughatiyan v. IPC The Hospitalist Co.*, No. 09 C 5418, 2015 WL 718345, at *5 (N.D. Ill. Feb. 17, 2015); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff satisfies this standard by pleading "the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). A plaintiff may plead fraud on information and belief only if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011).

## ANALYSIS

### I. The FVPS and HealthSource Defendants' Motions to Dismiss

The FVPS and HealthSource Defendants contend that Schramm's complaint does not satisfy the heightened pleading standards applicable to her FCA claims. The FCA makes liable any person who:

> (i) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (ii) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or (iii) conspires to commit a violation . . . .

31 U.S.C. § 3729(a)(i)-(iii). Schramm alleges that the defendants defrauded the

government in essentially two ways: (1) by billing Medicare for services rendered by physician assistants who had not yet obtained CMS approval and who were not supervised by a physician; and (2) by fraudulently billing for services that the defendants did not perform.

Schramm's allegations with respect to the first alleged scheme are the more specific of the two, but they are nevertheless deficient. "[A] complaint that fails to allege the exact time or specific location of the transmission of a fraudulent claim will not be dismissed under Rule 9(b)." *Oughatiyan*, 2015 WL 718345, at *5. But unlike the plaintiff in *Oughatiyan*, Schramm has not cited any representative examples of the alleged fraud. *Id.*; *see also Peterson v. Cmty. Gen. Hosp.,* No. 01 C 50356, 2003 WL 262515, at *2 (N.D. Ill. Feb. 7, 2003) ("[T]he court does not expect relator to list every single patient, claim, or document involved, but he must provide at least some representative examples."). In *Oughatiyan*, the plaintiff's complaint included five claims for initial hospital care submitted by the medical company to Medicare for payment. 2015 WL 718345, at *3. For each of those claims, the complaint provided the claim numbers, dates of service, codes billed, dates received, dates paid, and amounts for each claim. *Id.* Schramm has not provided this level of specificity as to any particular claim.

As Schramm points out, *see* R. 57 at 3-4, circuit courts are split regarding whether a relator *must* provide representative examples to satisfy Rule 9(b). *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153, 155-56 (3d Cir. 2014) (collecting cases). Neither side has cited any Seventh Circuit authority addressing this issue.

The court's decision in *United States ex rel. Lusby v. Rolls-Royce Corp.* suggests, however, that it would apply a flexible approach. 570 F.3d 849, 854 (7th Cir. 2009) ("We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit."). But even under the more "nuanced" standard that Schramm asks the Court to apply, she must still provide "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia*, 754 F.3d at 155-56 (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). In *Lusby*, the plaintiff did not have access to billing information, but nevertheless alleged significant detail regarding the defendant's alleged scheme:

> Lusby contends that Rolls–Royce defrauded the United States about the quality of the turbine blades in the T56 engine. The complaint alleges that five contracts between Rolls–Royce and the United States require all of the engine's parts to meet particular specifications; that the parts did not do so (and the complaint describes tests said to prove this deficiency); that Rolls–Royce knew that the parts were non-compliant (not only because Lusby told his supervisors this but also because audits by Rolls–Royce's design and quality-assurance departments confirmed Lusby's conclusions); and that Rolls–Royce nonetheless certified that the parts met the contracts' specifications. The complaint names specific parts shipped on specific dates, and it relates details of payment.

*Lusby*, 570 F.3d at 853-54. In *Kanneganti*, the plaintiff described "in detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot." 565 F.3d at 191-92. Schramm alleges that Boer, Dunford, and Baierle told her that she could treat patients while her CMS application was pending, R. 15 ¶ 42, but has not provided any details regarding that conversation (or conversations). She has not

alleged who submitted the application on her behalf, when it was submitted, or if she was told how long it would take to obtain CMS approval. *Cf. id.* at ¶ 43 (alleging that she "believes" that she was not "properly approved as a medical provider with CMS" for "some" period of time during her tenure because Baierle did not "formally advise[]" her that CMS had approved her application until October 3, 2012). Schramm's allegation that she was directed to sign Reyes' name as supervising physician is more concrete, *see id.* at ¶ 45, but also deficient. She merely alleges that, "at various times," Boer, Dunford, and Baierle told her to sign Reyes' name on Medicare patient records. Schramm argues that billing information is in defendants' exclusive control, but that does not excuse the lack of detail regarding matters that she would know from first-hand observation (e.g., the details of her conversations with the defendants, particular services that she rendered without Reyes's supervision, etc.).

With respect to the second alleged scheme, Schramm's allegations—"on information and belief"—that the defendants billed Medicare for services that were "not performed" are vague. *See id.* at ¶¶ 48-49. She alleges that "Boer, Dunford, Baierle, Paula Weihler and/or Stuart Weihler" told her to use certain CPT codes for treatments that, "upon information and belief," were either not performed, or were performed by other employees who were not medical providers of FVPS and Priority Health, and improperly billed to Medicare." *Id.* She has not alleged any details regarding the instructions she allegedly received from these defendants, nor has she tied these allegations to any particular service that she did (or did not) render. And

insofar these allegations are based on information and belief, she has not alleged sufficient details substantiating her suspicions. Finally, Schramm has not alleged any grounds for her belief that Stuart Weihler "tamper[ed]" with patient files to "increase Medicare billings." *Id.* at ¶ 49. Therefore, the FVPS and Priority Health Defendants' motions to dismiss are granted.

## II. The HealthSource Defendants' Motion to Dismiss

Schramm's allegations with respect to the HealthSource Defendants suffer from the same deficiencies as her allegations regarding the FVPS and Priority Health Defendants. She has not provided any representative examples of fraudulent billing, nor has she provided sufficient details regarding the alleged scheme. The Court gathers from the complaint that Schramm lacks direct, personal knowledge of HealthSource's practices. Nevertheless, she must provide details substantiating the grounds for her beliefs. *See Pirelli*, 631 F.3d at 443. Finally, the complaint does not allege any specific conduct—fraudulent or otherwise—by Frahm. Schramm merely alleges that he is the "principal and owner of HealthSource" and, "on information and belief," that he and HealthSource entered into an agreement with FVPS to obtain Reese's services. *See* R. 15 ¶¶ 16, 50.

### CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss, R. 32, 35, and 56, and dismisses her complaint without prejudice. If Schramm believes that she can overcome the deficiencies that the Court has identified, she may file a motion for leave to file a second amended complaint by

July 22, 2015. Failure to file an amended complaint by that date will convert this dismissal into a dismissal with prejudice. A status hearing is set for August 5, 2015 at 9:00 a.m. if an amended complaint is filed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 22, 2015